# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LONNA JO MAYO, )
)
       Plaintiff, )
v. ) Case No. CIV-15-142-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

The claimant Lonna Jo Mayo requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on June 25, 1971, and was forty-three years old at the time of the administrative hearing (Tr. 24, 195). She completed the twelfth grade, and has worked as a nurse aide and a hospital cleaner (Tr. 46, 241). The claimant alleges she has been unable to work since February 1, 2008, due to back and neck problems, nerve damage, seizures, diabetes, high blood pressure, and arthritis (Tr. 240).

**Procedural History**

On July 22, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated December 30, 2014 (Tr. 10-23). The Appeals Council denied review, so the ALJ's written opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she can lift/carry ten pounds frequently and occasionally, stand/walk at least two hours total during an eight-hour

workday, sit for six hours total, as well as occasionally stoop, balance, crouch, kneel, crawl, and climb ramps and stairs. Additionally, he found that she was unable to climb ladders, ropes, or scaffolds; she must avoid unprotected heights and dangerous moving machinery; and can perform no overhead work (Tr. 14-15). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, document preparer, clerical mailer, and touch-up screener (Tr. 21-22).

## Review

The claimant's sole contention of error is that the ALJ failed to properly assess her credibility. The Court finds this contention unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of disorders of the back and neck, seizure disorder, impingement syndrome of the shoulders, and diabetes (Tr. 12). Medical records generally indicate that the claimant was injured at work in 2007, affecting her neck and back, then experienced a motor vehicle accident in 2008, which she stated exacerbated these problems (Tr. 321-371). Imaging of the cervical spine in 2007 revealed focal disc protrusion at C3-4 on the right and otherwise mild spondylotic changes of uncertain clinical significance (Tr. 321). Following the 2008 motor vehicle accident, she complained of increased pain, but her treating physicians could find no cause (Tr. 354, 356). Notes reflect they did not have a surgical option for her, there was no objective imaging to explain her symptomatology, and her symptoms created a "fairly confusing picture" (Tr. 354-360). On December 30, 2008, Dr. Dean Shipley wrote that he could not provide "any pathological explanation from a

neurological viewpoint to account for her different symptoms" and he found nothing of an "organic basis" for her complaints (Tr. 378). Dr. J. Mike Banowetz essentially agreed with this assessment on April 15, 2009, but he was unsure as to whether the lack of objective findings was due to hysteria or malingering (Tr. 381-384). That same month, Dr. Amal Moorad of Southwest Rehabilitation and Occupational Medicine wrote that she still needed pain management, and had been instructed to do trunk stabilization and given instructions for management of chronic pain (Tr. 389).

Dr. Moorad prepared numerous evaluations of the claimant's physical abilities, and on July 20, 2009 he recommended that the claimant adhere to a strict home exercise program including stretching, trunk stabilization, and weight loss (Tr. 423). By September 17, 2009, the claimant was found to have a 39.5% cervical impairment, a 14.5% thoracic impairment, and a 50% lumbar impairment (Tr. 396-400). He noted that the pain in her back was exacerbated by physical activity involving lifting, bending, twisting, and sitting or standing in a static position for prolonged periods (Tr. 398). Other consultative examiners found reduced range of motion and pain with range of motion testing (Tr. 426-428).

On October 17, 2011, two views of the cervical spine revealed limited flexion with normal extension, unremarkable surrounding soft tissue, and clear visualized lung spaces (Tr. 450). The claimant had twenty degrees of flexion of the lumbar spine (Tr. 451). The claimant also complained of numerous seizures on a regular basis, but a brain MRI came back as normal (Tr. 757).

Dr. Moorad wrote on June 3, 2013 that the claimant was on chronic pain management maintenance, and he continued to emphasize a strict home exercise program (Tr. 537). By October of that same year, Dr. Moorad noted her diagnoses including lumbar impairments and chronic pain, and stated that the claimant was specifically *not* wheelchair bound but only uses a wheelchair "when her legs go numb because of her back pain" (Tr. 635). On January 27, 2014, Dr. Moorad wrote that he was decreasing her pain medication, but that the claimant was still symptomatic and could not function without medication, but was now "more functional and can do more of her daily activities with her medication' (Tr. 746). On July 28, 2014, Dr. Moorad assessed her with spinal pain syndrome with radicular symptomatology and "very limited mobility," noting she operated off and on from a wheelchair level (Tr. 763). She was consistently compliant with her pain medication contracts, but was nevertheless counseled on the dangers of narcotics and the need to taper her dosage of Narco in the future (Tr. 764, 823).

At the administrative hearing, the claimant testified that she does not drive because she gets seizures and her legs go numb, that her lower back mainly causes her problems, and that she has not been recommended for surgery or physical therapy but that she does exercises at home (Tr. 31-32). She stated that she can sit and stand for ten minutes each before hurting, and that she can walk maybe half a block (Tr. 33-34). She stated that she tries to get out, but that she has trouble walking around Wal-Mart and holds on to the grocery cart (Tr. 34). Additionally, she stated she had neck and hip problems, her legs go numb, and she has diabetes (Tr. 37). She testified that she has had steroid shots for her shoulders and her back (Tr. 43). She stated she had been dropping

things lately and needed to mention it to her doctor again (Tr. 44). She testified that she sometimes uses a wheelchair to go to her doctor's office in Oklahoma City, and that she has used a cane in the past to help her with her balance (Tr. 450.

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record. He also discussed the consultative examiner reports, as well as treatment records from her physicians (Tr. 16-21). He then determined that the claimant was not entirely credible, and concluded that the claimant was not disabled (Tr. 16-21).

The claimant contends that the ALJ erred in assessing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely

credible" (Tr. 15). Although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012), *quoting Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004). Here, the ALJ *also* set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) the evidence cannot be reconciled with her complaints of pain and alleged limiting effects, specifically only a focal disc protrusion and mild spondylotic change of the cervical spine in 2007; (ii) test results and her complaints painted a "confusing" picture; (iii) complaints regarding temporary paralysis in 2008 were inconsistent and doctors thought it might be hysterical paralysis and not an organic impairment; (iv) she was slow and unsteady in walking during a consultative examination, but was observed to walk much better in the parking lot, and there was no pathological explanation that accounted for her various symptoms; (v) she reported using a wheelchair because her legs go numb, but on exam with her treating physician she had no difficulty walking; (vi) her pain medication was being decreased, indicating an improvement in symptoms; (vii) she actually requested a change of medication from Norco (Tr. 16-20). The ALJ therefore gave clear and specific reasons that were linked to the evidence in the record for his credibility assessment.

The claimant additionally argues that the ALJ did not properly account for her pain and that the ALJ made an impermissible medical conclusion when he found that decreasing her pain medication was an indication that she was improving. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless

there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Here, the ALJ noted the times in the record when the claimant complained of pain and exhibited pain upon examination, when she reported pain getting worse, and when she reported that it improved. Furthermore, the ALJ accounted for the claimant's use of a wheelchair that no doctor found to be medically necessary. These findings indicate he properly considered and accounted for the claimant's pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. Here, "the ALJ provided specific reasons for his credibility determination on the testimony of the claimant . . . about the severity of [her] impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1138

-9-

(D. Kan. 2003). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*, and further applied the *Luna* factors to account for her pain. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**